### (January 4, 1968)

■ In the Matter of the Claim of MINNIE WACHTEL, Respondent, v. TABULATING CARD SALVAGE et al., Appellants, and SPECIAL DISABILITY FUND, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.— Gibson, P. J. Appeal from a decision which awarded death benefits upon the board's findings that decedent's work in helping to load and move 10 or 12 baskets weighing, when laden, in excess of 800 pounds each, was strenuous and arduous and precipitated a cardiac attack and death, which occurred on the work site when decedent suddenly collapsed and died. Denying accident, appellants first question the finding that 8 to 10 baskets were moved, inasmuch as the employer testified that his records, which were not produced, indicated that there were moved but 6 baskets, each weighing substantially less than claimant's witnesses asserted; but appellants, continuing, candidly state that "it is readily admitted that a considerable number of boxes were removed in a number of baskets, and granting that there were eighty boxes of eleven pounds each removed, this could not be categorized as strenuous or arduous work, when the manner in which the work was performed and the number of men doing it, are considered." The facts thus to be "considered" are to be found, according to appellants, in "the testimony of the employer that the decedent moved some boxes, but few in comparison with those handled by his two young co-workers." Thus appellants ignore evidence — which the minority memorandum on the other hand notes but discredits — to be found in the testimony of a disinterested witness, in another employ, who observed decedent and his companions at work on each of the five or six occasions when he passed them during the 45 minutes they were engaged in loading and moving the baskets. It was, in our view, peculiarly the board's function to evaluate this witness' testimony in all respects, including, certainly, the responses evoked on cross-examination by such four-pronged questions as that quoted in the dissent. In this connection, and despite the dissenter's observations on the subject, it seems to us quite proper and helpful to consider and quote, as we have done, appellants' own analysis of the evidence, as briefed by counsel of skill and experience. Second, appellants question the medical evidence of causation; but claimant's expert testified to causal relationship clearly and in detail, and concluded, "The most important point I feel, and the strongest point, is that the sudden death took place immediately following forty-five minutes of rather sustained physical exertion. In summation, therefore, it is my considered medical opinion that the work effort performed by this man must be assumed to be the competent, potent, precipitating factor of his sudden death. It is also my opinion that to disregard this stress and to disregard the time element involved and to assume that this was purely a coincidental affair, would be unwarranted." As respects the work effort and the medical opinion evidence alike, the record presents no more than factual

issues which the board determined upon substantial evidence. Decision affirmed, with costs to the Workmen's Compensation Board. Gibson, P. J., Aulisi, Staley, Jr., and Gabrielli, JJ., concur in memorandum by Gibson, P. J. Reynolds, J., dissents and votes to reverse and dismiss in the following memorandum: Decedent, aged 71 and suffering from a pre-existing cardiac condition, which had necessitated a recent hospitalization, suffered a myocardial infarction on his first day on the job with the appellant employer. The record contains medical testimony as to causal relationship but such is premised on the assumption that decedent during a 45-minute period just prior to his demise had participated in loading and moving 10 to 12 baskets containing roughly 80 11-pound boxes. Appellant employer and co-worker testified to a much smaller load and no participation in pushing or moving the baskets by the decedent which the board, of course, if there was substantial contrary evidence, did not have to accept (see *Matter of Angelino* v. *660 Park Ave. Corp.*, 28 A D 2d 798, 799), but the only testimony in support of the premised activity given by an employee of the establishment at which the work was conducted did not connect the decedent with the pushing of baskets. It is evident from the record that such employee, who was only a casual observer as he passed through the working area on five or six occasions, while he claimed he saw decedent handling the 11-pound boxes, could not testify as to what extent decedent actually participated in the total work activity involved, particularly that he helped move or push the 880 pound baskets and there is no basis for the assumption, considering the presence of the employer and two other younger men and their testimony that decedent did not help push the baskets or that decedent engaged in a major portion much less all of the work involved. This witness testified flatly that the only thing he actually saw decedent doing was lifting the 11-pound boxes which was exactly the testimony of the employer and co-worker. The pertinent portions of this witness' testimony on cross-examination are as follows: " Q. When Mr. Monteleone's men got up on the 21st floor, what were you doing while they were up there? A. He was helping the other men. Q. I am asking you, what you were doing? A. I am very busy there. I don't stand in one place. *I tell them what to take out and I go.* Q. *So, you did not actually see and you did not stand to watch the man who died later on; you did not see him do work or can swear from your own knowledge that he did any work?* A. *No.* MR. CLARK: But you were passing back and forth while they were there from 3:00 or 3:35 while they were working and you knew they were working taking the cards out? THE WITNESS: Yes. THE REFEREE: During the time, did you see the man who is dead, working? THE WITNESS: Yes he was working; helping. * * * Q. What did you see him doing? A. He was putting boxes in the basket. * * * Q. During the 45 minutes, how many times would you say you happened to see the man that died? A. How many? THE REFEREE: How many times would you say you saw him? THE WITNESS: About five or six times. * * * Q. And that was, just as you passed by? A. Yes. Q. And each and every time you saw him handling the eleven pound boxes and it took you about a minute to pass? MR. CLARK: Objection. THE WITNESS: *I don't know."* (Italics supplied.) It is obvious that this testimony does not support a finding that the decedent helped push or move any baskets weighing 880 pounds, or any other such weight. The majority has lifted from appellants' brief a statement supplementary in nature, that even pushing or moving the baskets (they were on ball-bearing wheels) would not be arduous work, and seem to be construing this as some sort of an admission that the testimony substantiated that the decedent was helping to push or move the baskets. It is significant that they point to no testimony in the record which connects the decedent with the pushing or

moving of baskets. The general description of the work, of course, as given by the witness, certainly does not constitute substantial evidence on this record that the decedent himself had engaged in the pushing or moving of baskets. As indicated above, the causative link between the decedent's work activity and his fatal attack depended solely and entirely upon the assumption that he had helped push or move the baskets. This assumption definitely is not supported by the evidence. There was no medical opinion that the lifting of the 11-pound boxes alone was sufficiently strenuous or arduous work to have any causal connection with the myocardial infarction, indeed, the medical opinions of all the doctors, including claimant's medical expert, were to the contrary. The general statement quoted in the majority opinion, as to medical causation, would only have substance or be germane to the issue if the facts upon which it was predicated (i.e., that decedent helped to push or move the baskets) were to be found in the record; without any question, they are not. Since the board's finding, as outlined above, is not supported by any evidence, much less substantial evidence, and since the opinion of the medical expert for the claimant was based upon facts which do not exist in the record, the decision should be reversed and the claim dismissed.